# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4061 | **DATE** | 7/2/2004 |
| **CASE TITLE** | JOSEPH C. JOY vs. BP PRODUCTS NORTH AMERICA, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum And Order. Plaintiff's preliminary injunction is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | JUL - 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOSEPH C. JOY,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　)　　No. 04 C 4061
　　　　　　　　　　　　　　　　　　)
BP PRODUCTS NORTH AMERICA INC.)
　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　)

DOCKETED
JUL - 6 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, terminated by defendant as a dealer, seeks a preliminary injunction against that termination, contending that it violates the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §2801 *et seq.* The preliminary injunction is granted.

The facts are largely undisputed. Plaintiff's service station is located near a high school in Chicago. One of plaintiff's employees regularly sold marijuana to high school students between 7:00 a.m. and 11:30 a.m., perhaps $500-$1,000 worth daily. Usually 20 to 30 children congregated at the station each morning, waiting for the station to open and sell drugs. Plaintiff, who owns another station, generally got to this station about 11:30 a.m. The employee did not sell drugs when the plaintiff was present. There is virtually nothing to indicate that plaintiff was aware of what was going on, although school officials, teachers, and law enforcement were aware of it, and the station was the subject of a police surveillance over an eight-month period. None of those who were aware advised the plaintiff of it, perhaps because it would have compromised the investigation or because the authorities were uncertain whether or not he was implicated.

After the arrest, the local alderman contacted the defendant and threatened that he

10

would press for the forfeiture of the station if the dealer (plaintiff) was not removed (although the Chicago ordinance he invoked probably would not have permitted such a sanction, absent the implication of the plaintiff). Defendant then advised plaintiff it intended to terminate the franchise and gave him a letter doing just that. This lawsuit followed.

Congress, concerned by the unequal bargaining power between franchisors and franchisees of service stations, enacted the PMPA. It is up to the franchisor to produce evidence to establish as an affirmative defense that termination is permitted by the PMPA, PDV Midwest Refining, L.L.C. v. Armada Oil and Gas Co., 305 F.3d 498 (6th Cir. 2002). A preliminary injunction should issue if there are serious questions going to the merits to make such questions fair ground for litigation and the balance of hardships favors the franchisee, not a heavy burden. Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir. 1984). Here the balance of hardship favors the franchisee – he will be put out of business if the injunction does not issue, and defendant cannot be faulted if the dealer remains in business because that continuation is the result of a court order despite the vigorous opposition of the defendant.

That vigorous opposition is understandable. This is not an attempt to appropriate hard-earned good will. *See* Thompson v. Amoco Oil Co., 903 F.2d 1118 (7th Cir. 1990). Rather, it is an effort to avoid ill will. Defendant has a justifiable and reasonable interest in not being associated with drug-dealing to children. It fears the publicity associated with any attempt to forfeit the property, even if that attempt is doomed to failure. But does that apprehension permit termination?

The PMPA permits termination for "failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship ...." (§2802(b)(2)(A)), or for the "occurrence of an event which is

relevant to the franchise relationship and as a result of which termination of the franchise ... is reasonable .... (§2802(b)(2)(C)). Contending that the dealer failed to comply, defendant points to paras. 10(b)(5), 19(d) and 19(g). Para. 10(b)(5) provides that the dealer "will not do or allow anything to occur at the Facility which could detract from or disparage the image or reputation of the Facility or the Lessor Trade identities. In particular, without limiting the foregoing, Dealer will not do or permit anyone else to do or allow at the Facility any of the following: ... (5) Store, sell or consume any illegal drugs ...." But plaintiff, on the present record, did not sell drugs and he did not permit or allow the employee to sell drugs. We think there must be some showing of culpability by the dealer, not necessarily actual knowledge, but at least gross negligence that allowed the illegal conduct to occur. Defendant suggests that is what happened because the dealer failed to devote personal attention at the facility by not being personally present there for reasonable periods of time during normal business hours, in violation of para. 19(g) of the Agreement. But this was a 24-hour, 7-day a week station, and plaintiff apparently spent far more time there than the dealer in Thompson v. Amoco Oil Co., *supra.*

In para. 19(d) of the Agreement, the franchisor is permitted to terminate the franchise upon the commission "by Dealer or any of Dealer's employees or agents of any deceptive, fraudulent, illegal, immoral or other improper act relevant to the operation of the business on the Facility which is detrimental to Lessor or to any member of the public ...." Here, we believe, defendant is on much firmer ground, but not firm enough. Plaintiff contends that the specific illustrations of such conduct circumscribe the prohibited conduct, and illegal drug sales are not covered by that provision. We disagree. Such sales are more serious than the illustrations listed. But the PMPA describes an event that is relevant to the franchise

relationship and as a result of which termination of the franchise is reasonable, as including "fraud or criminal misconduct <u>by the franchisee</u> relevant to the operation of the marketing premises" (emphasis supplied). In light of that, we cannot conclude that a provision that attributes every illegal or other improper act by an employee to the dealer is a reasonable basis for termination. Otherwise, a single random misconduct by an employee would permit termination.

Here, of course, there was far more than a single random sale of drugs, and clearly defendant would be justified in terminating the franchise if the dealer was himself implicated in the sales, or condoned them – or even if he ignored indications of ongoing criminal activity. But we believe there has to be some evidence of franchisee culpability, and, on this record, that evidence is lacking. Accordingly, we preliminarily enjoin the termination, while recognizing that a more thoroughly developed record may provide the necessary reasonable basis for termination.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 2, 2004.